## JOHN DALY *et al.*

### *v.*

## ST. PATRICK'S CATHOLIC CHURCH.

*Filed at Ottawa November 20, 1880.*

REFERENCE TO MASTER—*necessary when a long account is to be stated.* When there is an account to be stated, which account is lengthy, consisting of very many small items, amounting in all to $30,000, and covering a period of thirteen years, and the evidence is voluminous and conflicting, the cause should be referred to a master to state the same, and it is error not to do so.

APPEAL from the Circuit Court of Whiteside county.

Messrs. BENNETT & GREEN, for the appellants.

Mr. J. E. McPHERRAN, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

For a number of years St. Patrick's Catholic Church, at Sterling, had been organized, was incorporated, and belonged to the diocese of Chicago, which is presided over by a bishop. He, according to the usages of the church organization, stations or locates priests in the several parishes or congregations within his jurisdiction. About the 3d of July, 1863, the bishop appointed the Rev. John Daly to this parish, and he entered upon and continued to perform the duties of a priest of that church until about the month of May, 1876. Previous to 1863, the people composing the church at Sterling had contracted for the purchase of lots 8 and 10, in block 12, west of Broadway, and had commenced the erection of a church edifice and a parsonage. There remained due of the purchase money on these lots the sum of $150 at the time Daly was placed over the congregation, and Hugh Wallace, the vendor, still held the title.

Daly made collections, paid the balance of the purchase money, and had the lots conveyed to him, and he subsequently conveyed to the bishop—who, under the statute, is a corporation sole—and was authorized to receive the conveyance and hold the title. Subsequently, Daly purchased lots 1, 2, 3 and 7, in block 12, and lots 10 and 11 in block 11. These lots were paid for, and conveyances were made to Daly; and he claims the money so used was his own, but the church claims the money so employed belonged to it.

Buildings were erected on a portion of these lots, and there is the same dispute as to whether the money paid for their erection belonged to Daly or the church. The church claims all of these lots and buildings, but Daly claims the purchase was made, and the buildings erected, with his private means, and that they were purchased for his own use, and they are

his own individual and private property, and the church has no just claim to them.

It is claimed that the church has always, since the purchase, been in possession of all of the lots except 10 and 11, in block 11, and 7, in block 12, which are conceded to be in the possession of Daly. It appears that he mortgaged, or encumbered by deed of trust, lots 1 and 2, in block 12, to secure the payment of about $7400, before he conveyed them to the bishop. The indebtedness thus secured appears to have been owing to a number of persons. The deed of trust was made to one McCune. It is charged that these debts are fictitious and fraudulent. It is charged that Daly secretly conveyed the title to lots 10 and 11 and lots 3 and 7 to one Henry without consideration, and Henry at the time knew the church was the equitable owner of the property.

This suit was instituted by the church to enforce its claim as set forth. Daly, Henry, and all persons appearing as holders of liens or other interests, were made parties defendant. A portion of the defendants were defaulted, and others answered. A cross-bill was filed by Daly and his mother, to which answers were filed, and a large amount of evidence was taken and heard. On a hearing, the circuit court found and decreed that the title of the church to lots 1 and 2, in block 12, was free and clear from all incumbrance, and the church was the rightful owner of lots 3 and 7 in the same block, and the deed of trust to Henry was fraudulent, and was decreed cancelled; that the deed from him to Johnson was taken with notice of the fraud; that McCune release the trust deed of record which he held; that Johnson convey lots 3 and 7 to complainant; that complainant be allowed to redeem lot 7 in block 12 from the sale under Rhaly's execution; that lots 10 and 11, in block 11, were free from all claim of appellant.

Daly appeals, and asks a reversal.

The complainant attempted to prove that the money of the church was used to pay for these lots, by proof to falsify Daly's accounts of the receipts of money for the church, for

the whole period of the thirteen years he was in charge of the affairs of the church; that he was poor and destitute of means when he went to Sterling, and had no other source from which to derive the means of purchasing and paying for these lots but his salary, or perquisites received as priest in charge of the church. On this question, there is in the record a large amount of evidence, by no means harmonious or entirely satisfactory. His accounts are lengthy, consisting of items, small in amount, and aggregating, for the whole period, over $30,000, including items of receipts and expenditures through the entire period.

It can not be expected, nor can it be required of us, to take this vast amount of evidence and state an account between the parties. It is impracticable, even if time would permit. A reference should have been made to a master to state an account. We have repeatedly held that we will not in such cases perform that labor, if permitted by the rules of practice. We will, in such cases, reverse and remand the cause, that an account may be stated by the master. See *Patten* v. *Patten*, 75 Ill. 446; *Moss* v. *McCall*, id. 191; *Riner* v. *Touslee*, 62 id. 266, and *Sallee* v. *Morgan*, 67 id. 376. We perceive nothing in this case to take it out of the rule.

We have examined the evidence sufficiently to see that the usages of the church are not very definitely proved as to what appellant is entitled to retain from the funds which come into his hands as the priest in charge. Nor does the testimony of the bishop very clearly specify the lots in reference to which the admission was made, on the ground of his understanding, or inference that all of the lots were included in the admission made by Daly. But on another trial, fuller evidence may, and probably will, be given.

The decree of the court below is reversed, and the cause remanded, with directions that it be referred to a master to state an account, and that each party may, if desired, introduce further proof as to the usages of the church, and as to other questions in the case.          *Decree reversed.*